UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

HEATHER L. HINKFORTH
a/k/a DeStael,

    Plaintiff,

    v.           Case No. 03-C-0343

INTERNATIONAL UNION OF
BRICKLAYERS & ALLIED CRAFTSMEN,
BRICKLAYERS & ALLIED CRAFTSMEN
DISTRICT COUNCIL LOCAL #8,

    Defendants.

---

DECISION AND ORDER DISMISSING IMPLIED CLAIMS AGAINST LOCAL 8, AMENDING THE CAPTION, DIRECTING CLERK OF COURT TO CORRECT DOCKET, DENYING MOTION TO STRIKE AFFIRMATIVE DEFENSES, GRANTING MOTION FOR ENFORCEMENT OF SUBPOENA, DENYING MOTION FOR SANCTIONS, DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, DENYING MOTION TO STRIKE AFFIRMATIVE DEFENSE OF PREEMPTION, DENYING MOTION TO POSTPONE RESPONSE TO SUMMARY JUDGMENT MOTIONS, DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING MOTION FOR CLASS CERTIFICATION, AND DIRECTING HINKFORTH TO SEEK COUNSEL

    Plaintiff, Heather Hinkforth, filed this case alleging discrimination by defendants on the basis of gender and disability. Hinkforth, who represents herself, was an apprentice in the masonry field and affiliated with a union. She sues the International Union of Bricklayers & Allied Craftsmen (the International Union) and either the Bricklayers & Allied Craftsmen District Council or Local 8 (more on that later).

On April 29, 2005, Hinkforth filed her Third Amended Complaint.[1] Defendants filed their answers on May 10, 2005.

THE DEFENDANTS

In an order of March 16, 2005, this court pointed out the confusion in the Amended Complaint and proposed Second Amended Complaint regarding whether Hinkforth was suing the District Council, Local 8, or both. The Amended Complaint and proposed Second Amended Complaint referenced a "District Council (Local #8)," but other documents in the record confirmed that the District Council and Local 8 are separate entities. Hinkforth was told that she would have to clear up the matter at the next in-court hearing and in any future pleadings. At a hearing on April 21, 2005, Hinkforth stated that "basically there are two entities." (Tr. of 4/21/05 at 15.) When asked whether she was asserting different claims "against the District and Local," Hinkforth stated that she had "additional claims on the Local." (*Id.* at 28.)

However, in the Third Amended Complaint, Hinkforth again mentions the District Council and Local 8 in the caption. Confusingly, she continues to name the International Union and the "Allied Craftsmen District Council (Local #8)" – exactly the problem that the March 16, 2005, order told Hinkforth to fix. Thereafter, Hinkforth discusses her claims against the District Council rather than Local 8. She states that the action is against the International Union "and their Milwaukee, WI counterpart, District Council." (3d Am. Compl. ¶ 3.) Hinkforth asserts that she was subjected to discrimination by "both the International Union in Washington, D.C. and their local, District Council, in Wisconsin." (*Id.* ¶ 7.) Moreover, she

---

[1]Actually, no Second Amended Complaint was ever filed. Hinkforth had sought permission to file a Second Amended Complaint, but the court denied her request last spring. The court later allowed her to file a revised amended complaint, and Hinkforth titled it the "Third Amended Complaint."

2

refers to there being only two defendants. (*Id.* ¶¶ 49, 50.) Nevertheless, she continues to mention Local 8 in some of her alleged facts. (*Id.* ¶¶ 9, 38, 42.)

The court advised Hinkforth to clarify whether she was suing the District Council or Local 8 or both. However, she has not made her decision clear. The defendants were confused enough that the District Council and Local 8 answered the Third Amended Complaint. Consequently, the District Council or Local 8 must be released from further participation in this case. The introductory paragraphs in the Third Amended Complaint indicate that Hinkforth means to sue the District Council rather than Local 8. (*Id.* ¶¶ 3, 7.) Therefore, the court interprets the Third Amended Complaint as asserting claims against the District Council but not Local 8. Accordingly, implied claims against Local 8 will be dismissed. Consistent with this finding, the clerk of court must clarify in the docket that the District Council and Local 8 are separate entities and that all claims against Local 8 terminated with the filing of the Third Amended Complaint. The caption of the case will be amended to drop any reference to Local 8.

## MOTION TO STRIKE AFFIRMATIVE DEFENSES

On July 11, 2005, Hinkforth moved to strike each defendant's first, second, fourth, fifth and sixth affirmative defenses. She argues that these affirmative defenses were pled insufficiently and she has not sufficiently been put on notice. As the basis for her motion to strike, Hinkforth cites Fed. R. Civ. P. 8(a) and (c).

Rule 8(a) and (c) govern, respectively, the requirements for pleading claims for relief and the requirements for pleading affirmative defenses. Although Rule 8 governs the sufficiency of the affirmative defenses, it does not give Hinkforth a basis for her motion to strike. Any such authority comes from Fed. R. Civ. P. 12(f) instead:

3

> Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense. . . .

*See Bartashnik v. Bridgeview Bancorp., Inc.*, No. 05 C 2731, 2005 WL 3470315, *1 (N.D. Ill. Dec. 15, 2005) (noting that Rule 12(f) is the primary procedure for objecting to an insufficient defense); *Lopez v. Autoserve, LLC*, No. 05 C 3554, 2005 WL 3116053 (N.D. Ill. Nov. 17, 2005) (ruling on motion to strike affirmative defenses brought under Rule 12(f)).

Certificates of service indicate that copies of the answers were mailed to Hinkforth on May 10, 2005, however, Hinkforth was not permitted a reply to the answers. (Certifs. of Service filed 5/10/05.) Allowing five days for such mail to arrive at Hinkforth's home, the court calculates that she was served on or about May 15, 2005. Hinkforth then had twenty days, or until about June 4, 2005, within which to file her Rule 12(f) motion. Over a month later, on July 11, 2005, Hinkforth filed her motion to strike. Consequently, her Rule 12(f) motion (even though not labeled as such) will be denied as untimely.

Notably, Hinkforth objects to the defenses for their failure to specify which claim or claims they attack. However, the Third Amended Complaint asserts a relatively lengthy list of claims against the defendants. Having pled a multitude of claims, Hinkforth cannot now complain about the defendants' lack of specificity in return.

MOTION FOR ENFORCEMENT OF SUBPOENA AND FOR SANCTIONS

Hinkforth has moved to enforce a subpoena served on the Wisconsin Department of Workforce Development, Bureau of Apprenticeship Standards (DWD) and for sanctions because of "the grievous nature of the violation of the subpoena." She asserts that

the DWD lied to her and intentionally misled her to believe that it would cooperate without objection. (Mot. for Enforcement of Subpoena & Sanctions at 1.)

Attached to Hinkforth's affidavit in support of her motion is a copy of the process server's declaration indicating that the subpoena was served on Kay Haishuk at the DWD's Bureau of Apprenticeship Standards, in Oak Creek, Wisconsin, on June 29, 2005. (Hinkforth Aff. filed 7/13/05, Ex. 1.) The subpoena sought apprenticeship records for Hinkforth as well as several other persons and had a return date of June 30. (*Id.*) According to Hinkforth, Haishuk is the DWD's record custodian for apprentice records. (Hinkforth Aff. filed 7/15/05 ¶ 3.)

Following service of the subpoena, Hinkforth contacted Haishuk about viewing the records and extending the return date. (*Id.* ¶ 4.) The DWD's attorney, Howard Bernstein, responded on June 29; assured Hinkforth that he would get the documents to her; and, stated that he would send a confirmation letter. (*Id.* ¶ 5.)

Hinkforth says she never received any letter, nor was the subpoenaed information received by July 12, 2005, fourteen days after service of the subpoena the due date. (*Id.* ¶¶ 6, 7.) She then called Bernstein and left a message reminding him of the information and advising that if she did not receive it by July 13, she would file the now pending motion. (*Id.* ¶ 8.) Bernstein did not respond before Hinkforth filed her motion. (*Id.* ¶ 9.)

Hinkforth's affidavit indicates that as of July 13, 2005, she had received neither an objection to the subpoena from the DWD under Fed. R. Civ. P. 45(c)(2)(B) nor the documents requested. (*Id.*)

5

A certificate of service indicates that Hinkforth mailed a copy of her motion to legal counsel for the DWD, Bureau of Apprenticeship Standards. (Certif. of Service filed 7/13/05.) The DWD has not responded to the motion.

A person served with a subpoena to produce documents has fourteen days after service within which to object to the request. Fed. R. Civ. P. 45(c)(2)(B). "Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued." Fed. R. Civ. P. 45(e). The DWD has neither obeyed the subpoena nor objected to it. Nor has it responded to Hinkforth's motion. Therefore, the court will grant the motion for enforcement of the subpoena, a/k/a Hinkforth's motion to compel,[2] and issue an order for the DWD to respond to the subpoena by March 28, 2006, to show cause in writing by that date why it should not be held in contempt.

## DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO POSTPONE RESPONSE TO DEFENDANTS' SUMMARY JUDGMENT MOTIONS

In the court's decision and order of March 16, 2005, it denied the summary judgment motion filed by the defendants because of procedural infirmities. The court stated:

> Two procedural issues must be noted regarding defendants' motion for summary judgment. First, because Hinkforth proceeds pro se, Civil L.R. 56.1 (as amended April 7, 2003) required that the summary judgment motion (1) give Hinkforth certain warnings regarding her response to the summary judgment motion and (2) include the text of Fed. R. Civ. P. 56(e) and (f), and Civil L.R. 56.1, 56.2, and 7.1. Defendants included in their motion the text of Rule 56(e) and (f) and Civil L.R. 7.1. However, they failed to provide the text of Civil L.R.

---

[2]Other evidence in the record suggests that Hinkforth may already have obtained from the Milwaukee Area Technical College some of the same documents she seeks from the DWD. (*See* Defs.' Opp'n to Pl.'s Mot. to Postpone Resp. (Doc. #154), Ex. 1 (Ho Aff.) ¶¶ 2-7.) However, that Hinkforth may have obtained some of the documents elsewhere does not excuse the DWD from failing to object to or comply with a subpoena from this court.

6

> 56.1 and 56.2. Civil L.R. 56.2 is particularly important, as it describes a party's duties regarding proposed findings of fact. That rule would have provided Hinkforth with notice that as a party opposing a motion for summary judgment, she needed to respond to the movant's proposed findings of fact point by point and to provide citations specific to evidentiary materials.
>
> Second, Civil L.R. 56.2(d) provides that all factual assertions made in any brief must be supported by both specific citations to evidentiary materials in the record as well as the corresponding proposed finding of fact. The statement of facts in defendants' brief in support of their summary judgment motion contains no cites at all – neither to the evidentiary materials nor to the proposed findings of fact.

(Order of 3/16/05 at 23.)

At the court hearing of April 21, 2005, the court raised the issue of the local rules and asked counsel for defendants whether he had the version of the rules as amended in April 2003.[3] (Tr. of 4/21/05 at 35, 46.) The court indicated that the warnings to pro se litigants regarding summary judgment procedures are enforced "out of recognition of the fact that there are many persons who come into court without the kind of legal training that you [defense counsel] have." (*Id.* at 36.) Defense counsel assured the court that any re-filed summary judgment motion would "be re-filed with the most current version of the local rules being applied fully." (*Id.* at 35-36.) He added that he was on his way to the clerk's office to get an up-to-date copy of the local rules. (*Id.* at 46.) Also, the court told counsel that the current rules are on the district's website. (*Id.*)

Incredibly, the motions for summary judgment filed by defendants subsequent to the March 16, 2005, order and the April 21, 2005, hearing repeat the first error mentioned

---

[3] Until the April 2003 amendments, the local rules did not require proposed findings of fact to be submitted in cases involving a pro se party. However, as of April 2003, any summary judgment motion, even in a case involving a pro se party, must be accompanied by proposed findings of fact. Accordingly, the warnings to a pro se plaintiff were revised to incorporate a warning regarding the rule on proposed findings of fact. Defendants' motions did not include that warning.

7

above. The text of Civil L.R. 56.1 and Civil L.R. 56.2 is still missing from each motion. Attached to this order are copies of Civil L.R. 56.1 and 56.2, printed from the district's website on March 5, 2006, for defense counsel's benefit.

Further, while the briefs now include references to the evidentiary materials, they nevertheless fail to include references to the proposed findings of fact. (*See* Int'l Union's Br. in Supp. (Doc. #116) at 2-6; District Council's Br. in Supp. (Doc. #121) at 2-6.)

For these reasons, the summary judgment motions are being denied. No re-filing will be permitted at this point, and in the event defendants win this case, no costs shall be awarded for any expenses related to these summary judgment motions or the summary judgment motions denied in the March 16, 2005, order.

Because the motions for summary judgment are being denied, Hinkforth's motion to postpone her response due to the outstanding discovery request on the DWD is moot.

MOTION TO STRIKE AFFIRMATIVE DEFENSE OF PREEMPTION

Hinkforth moves to strike as an improperly raised affirmative defense the defendants' claim that some of her state-law claims are preempted by federal labor law. Defendants did not include an affirmative defense of preemption in their answers to the Third Amended Complaint. Instead, they raised the issue in their motions for summary judgment.

To the extent that the motions for summary judgment are being denied, there no longer is a need to strike a potential affirmative defense raised in those motions. Therefore, the motion to strike will be denied. Should the defendants raise this issue again during the case, the parties can argue then about the propriety of the defendants' preemption

8

argument. However, at this point in time a ruling regarding the propriety of the argument would be an advisory opinion.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Summary judgment motions were due on July 25, 2005. (Order of 7/6/05.) On August 25, 2005, Hinkforth filed a motion for partial summary judgment. The motion was untimely and therefore will be denied. She too fails to cite to any proposed findings of fact, or any evidence in her statement of facts, and for that reason the motion will be denied. *See* Civil L.R. 56.2(d). Hinkforth needs to meet the same procedural standards as defendants. Regardless, the motion would fail on the merits. Hinkforth has stated that through filing the motion she seeks to narrow the remaining issues for trial, which the court encourages. However, the evidence before the court indicates that material issues of fact exist.

For instance, if the union was the exclusive bargaining representative of employees in a bargaining unit, it had a statutory duty to fairly represent all of those employees in its enforcement of a collective bargaining agreement. *See Vaca v. Sipes*, 386 U.S. 171, 177 (1967).[4] A breach of a union's duty of fair representation occurs when the union's conduct toward a member of the collective bargaining unit is "arbitrary, discriminatory, or in bad faith." *Id.* at 190.

Hinkforth's motion for partial summary judgment is based in large part on her argument that the District Council discriminated against her by failing to file a grievance against the employer that fired her in August 2001 shortly after she was raped by a co-worker

---

[4]While the collective bargaining system as set up by Congress by necessity subordinates the interest of an individual employee to the collective interests of all employees in the bargaining unit, "the duty of fair representation has stood as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Vaca*, 386 U.S. at 182.

9

at an off-site party. (Pl.'s Br. in Supp. of Mot. for Partial Summ. J. at 3, 13.) Hinkforth states that she called District Council representatives Ken McLaren and Fred Hultquist about wrongful discharge. (*Id.* at 5.) Hultquist admits that he talked with Hinkforth about her firing and the rape and told her to contact the police. (Hultquist Suppl. Aff. filed 9/23/05 ¶ 7.) He states that Hinkforth never asked him to investigate her discharge or file a grievance with the employer. (*Id.*) On the other hand, Hinkforth states that she told Hultquist that she was fired because of the alleged rapist's position in the employer company (Hinkforth Aff. filed 8/25/05 (Doc. #136) ¶ 9), and she contends that her complaints about wrongful discharge were ignored (Pl.'s Br. in Supp. of Mot. for Partial Summ. J. at 5). Defendants' contradictory evidence regarding a material fact means that the partial summary judgment motion would be denied. Whether Hinkforth asked Hultquist to file a grievance with the employer on her behalf and also whether the District Council breached its duty of fair representation because of Hinkforth's gender or disability are questions for the jury at trial.

At times, Hinkforth has argued that the District Council discriminated against her regarding referrals for work. With her motion for partial summary judgment she presents the affidavit of her brother, who states that until his sister began having problems with the union in 2001, the union would make phone calls on his behalf to get work (Justin Hinkforth Aff. (Doc. #139) ¶¶ 6-12.) Hinkforth's brother says that it was common for members in the union to say she would need good luck to get employed because she could not rely on the union as men did and that he never saw union agents checking on her progress at work. (*Id.* ¶¶ 22, 26.) But according to District Council representative Fred Hultquist, Hinkforth received more referrals than many male apprentices. (Hultquist Suppl. Aff. filed 9/23/05 ¶ 3.) Again, a question of fact exists.

10

Hinkforth attempts to establish that the International and the District Council have acted as one entity or that Ken McLaren of the District Council acted as the International's agent regarding certain conduct toward her. (Pl.'s Mot. for Partial Summ. J. at 2, 6-9.) Yet evidence presented by defendants indicates that the two are legally distinct entities and that the International's constitution prohibits the District Council from acting as the International's agent unless express authorization has been given. (Def. Int'l's Mot. for Summ. J., Boland Aff. ¶ 2, Ex. 1.) Further, Hinkforth does not present evidence of any such authorization. Therefore, a question of fact exists regarding the defendants' relationship and involvement in the other's actions or inactions.

Similarly, Hinkforth attempts to establish that the District Council is responsible for discrimination in the cancellation of her apprenticeship by the Department of Workforce Development's Bureau of Apprenticeship Standards on the recommendation of the Milwaukee Area Joint Apprenticeship Training Committee (JATC). (Pl.'s Br. in Supp. of Mot. for Partial Summ. J. at 9-10.) She contends that the DWD and JATC do whatever the District Council tells them to do because District Council representatives control the JATC. (*See id.*) However, evidence in the record shows that District Council and other union members or employee representatives filled only four of ten seats on the JATC. (Hultquist Suppl. Aff. filed 9/23/05 ¶ 2.) Four seats were filled by employer representatives, one was filled by a Milwaukee Area Technical College representative, and one was filled by a representative from the state, Kay Haischuk of the DWD. (*Id.*; Hultquist Aff. filed 7/25/05 ¶ 11.) Moreover, the members of the JATC are appointed by the DWD's Bureau of Apprenticeship Standards or Bureau of Apprenticeship and Training. (Hultquist Suppl. Aff. filed 9/23/05 ¶ 2; Hultquist Aff. filed 7.25.05 ¶ 4.) Only two of the ten members at the time Hinkforth's apprenticeship was

cancelled – Ken McLaren and Fred Hultquist – appear to factor into her other claims of discrimination. Therefore, the evidence is disputed as to whether two, or even four, union members could control the ten-member state-appointed board.

Moreover, Hinkforth admits in her reply brief that the defendants have raised genuine issues of material fact requiring a trial. (Pl.'s Reply to Defs.' Response to Pl.'s Mot. for Partial Summ. J. (Doc. #162) at 4 ("The standard is clear you are not supposed to act as the fact finder with so many key material facts at issue."), 6 ("They claim that Hinkforth made no formal request for investigation of the employer. It would at the least be a material fact to determine first of all if she did . . . ."), 7 ("[T]here is at least one material fact at issue in this case whether it is from the defendants' summary judgment or the plaintiff's partial summary judgment . . . .").)

In sum, the motion for partial summary judgment will be denied for these reasons as well.

## MOTION FOR CLASS CERTIFICATION

On November 21, 2005, Hinkforth moved for certification of a class, with her as its representative. She seeks to represent a class of "every adult female able to work in the United States." (Mot. to Certify Case to Class Action Status ¶ 10.) The motion will be denied for procedural as well as substantive reasons.[5]

Procedurally, Hinkforth's motion was filed too late – after the close of discovery and after the summary judgment motion deadline. Just as importantly, at the hearing last

---

[5]Hinkforth objects to defendants' opposition to this motion because a certificate of service filed by defendants states that a brief and affidavit were sent to her, but she never received the affidavit. (Objection to Defs.' Reponse filed 1/6/06 (Doc. #170); see Certif. of Service filed 12/19/06 (Doc. #169).) Hinkforth contends that her right to due process would be violated by the defendants' failure to provide her with a copy of the affidavit. According to the court docket, no affidavit was ever filed in connection with the opposition brief, thus the court has no such affidavit either. Therefore, no affidavit of defendants' has been considered regarding this motion and no prejudice can have occurred.

12

April, this court quizzed Hinkforth regarding the claims she asserted against the defendants. Based on her responses, the court allowed her to file the Third Amended Complaint limited to the claims she discussed. (Tr. of 4/21/05 at 15-32.) At no time during that hearing did she discuss any class allegations. (*See id.*)

Substantively, Hinkforth does not meet the requirements of Fed. R. Civ. P. 23(a). A plaintiff may sue as the representative of a class

> only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Certainly, Hinkforth fails the latter three requirements. She has not established that common questions of law or fact exist regarding every able-bodied woman in America and the International and District Council. She cannot possibly establish that every able-bodied woman in America knows who the defendants are let alone has applied for membership with them. Also, Hinkforth cannot establish that her own claims are typical of the claims of the class. Even if the class is defined as all women who have applied for membership with the defendants and all women who have been members, Hinkforth cannot establish that her claims are typical. She discusses "disparate impact" and how only three of 803 bricklayers in Wisconsin are women. (*See* Mot. to Certify Case to Class Action Status ¶ 3.) Even assuming that the reason so few women are in the defendant unions due to defendants' discrimination, Hinkforth is not a typical representative for those women. She made it into the union; she was not denied entry. And the "class" that Hinkforth could represent – those in the union – is so small (three) that joinder of the two other women

13

bricklayers as plaintiffs would not be impracticable and no class action would be needed. Also, Hinkforth cannot fairly and adequately protect the interests of the class, as she has chosen to represent herself. And lastly, Hinkforth is a pro se litigant who is not authorized to practice law or fairly and adequately represent a class.

## COUNSEL

The court is denying all summary judgment motions and is not permitting any refiling. The result is that this case will be set for trial and perhaps sent for mediation prior to the trial date. Hinkforth has not asked for the appointment of counsel during the motions phase, but taking a case to trial is different than motions practice. She will need to know the Federal Rules of Evidence as well as sufficient law to submit jury instructions. She will need to cross-examine witnesses and properly authenticate exhibits.

The court directs Hinkforth to promptly approach several attorneys seeking representation for the remaining proceedings in this case. She has survived summary judgment motions and her case appears as if it will go to trial, making it more attractive to attorneys than it was before. Perhaps an attorney will be willing to take the case on a contingency fee, reduced fee, or no-fee basis at this point.

Consequently,

IT IS ORDERED that any implied claims against the Allied Craftsmen Local 8 are dismissed.

IT IS FURTHER ORDERED that the clerk of court correct the docket to reflect that the Allied Craftsmen District Council and the Allied Craftsmen Local 8 are separate entities (although represented by the same attorneys) and that all claims against Local 8 terminated with the filing of the Third Amended Complaint. The clerk of court should also

review the record (*see, e.g.*, Doc. #94 and #95) and clarify which documents were filed by the District Council and which were filed by Local 8.

IT IS FURTHER ORDERED that the caption is amended to delete any reference to Local 8. In other words, the caption should name only the International Union and the District Council as defendants, without the "Local 8" after the District Council's name.

IT IS FURTHER ORDERED that Hinkforth's motion to strike (Doc. #107) is denied.

IT IS FURTHER ORDERED that Hinkforth's motion for enforcement of subpoena (Doc. #111) is granted and the motion for sanctions (same) is denied.

IT IS FURTHER ORDERED that on or before March 29, 2006, the Wisconsin Department of Workforce Development must respond to the plaintiff's subpoena of June 29, 2005, or demonstrate to the court in writing why it should not be held in contempt of court for failure to obey Hinkforth's subpoena.

IT IS FURTHER ORDERED that defendants' motions for summary judgment (Doc. #114 and #119) are denied.

IT IS FURTHER ORDERED that Hinkforth's motion to postpone response to defendants' summary judgment motions (Doc. #131) is denied.

IT IS FURTHER ORDERED that Hinkforth's motion to strike affirmative defense (Doc. #129) is denied.

IT IS FURTHER ORDERED that Hinkforth's motion for partial summary judgment (Doc. #141) is denied.

IT IS FURTHER ORDERED that Hinkforth's motion for class certification (Doc. #166) is denied.

IT IS ORDERED that Hinkforth seek representation from at least five attorneys practicing in areas of law related to the issues in this case.

And finally,

IT IS ORDERED that a status conference is set for **April 19, 2006, at 9:00 a.m.** in Courtroom 222, U. S. Courthouse, 517 E. Wisconsin Ave., Milwaukee, Wisconsin, to set final pretrial conference and trial dates and to discuss referral of this case to Magistrate Judge Patricia J. Gorence for mediation.

Dated at Milwaukee, Wisconsin, this 14th day of March, 2006.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge